UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RENEE CASSARD,

                              Plaintiff,

                    -against-

OMNICOM MEDIA GROUP HOLDINGS,
INC., OMNICOM GROUP, INC., OMD USA
LLC, and RALPH PARDO,

                              Defendants.

Case No. 1:25-cv-02201 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Renee Cassard ("Cassard") sued her former employer, Omnicom Media Group

Holdings, Inc. ("OMG"), its parent company Omnicom Group, Inc. ("OGI"), its corporate

affiliate, OMD USA LLC ("OMD"), and her former supervisor Ralph Pardo ("Pardo") for age

and gender discrimination and retaliation in violation of the New York State Human Rights Law,

N.Y. Exec. Law § 290, et seq. ("NYSHRL"); the New York Labor Law § 740 ("NYLL"); the

New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, et seq. ("NYCHRL"); Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), as amended; and the

Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). Dkt. 31

("Amended Complaint" or "AC").

Two of the defendants, OMD and OMG, answered the Amended Complaint. *See*

Dkts. 36, 37. The other two defendants, Pardo and OGI, moved to dismiss some or all the claims

against them pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). *See* Dkts. 39, 41.

Cassard opposed only the latter's motion to dismiss. Dkt. 46 ("Opp."). OGI then filed its reply.

Dkt. 48 ("Reply").

For the reasons below, the Court GRANTS both motions to dismiss.

## BACKGROUND

The following facts are taken from the Amended Complaint and are accepted as true for purposes of the present motions. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

### I. The Parties

Renee Cassard is a woman over the age of 40 currently residing in South Carolina. AC ¶¶ 7, 21. She is a former research and marketing executive who worked, with her group, "under [OMG]" between 2011 and 2024. *See id.* ¶¶ 10, 20, 23, 83.

OMG and OMD USA LLC are corporate affiliates, owned by their parent company, OGI. Opp. at 3; Dkt. 23. Cassard refers to these three Defendants collectively as "Omnicom," which she alleges is a "single integrated organization with multiple corporate entities forming a global advertising, marketing, and corporate communications company." AC ¶ 9.

Ralph Pardo worked as Chief Executive Officer for "Omnicom North America" during the relevant period.[1] *Id.* ¶ 17. While holding this position, "Pardo was a supervisor or had supervisory authority over Cassard." *Id.* ¶ 18.

### II. Factual background

Cassard alleges that in 2011, she began working at "Omnicom" as the U.S. Director of Research and Analytics. *Id.* ¶ 20. While in this position, Cassard received multiple promotions, eventually reaching the position of Chief Research Officer in January 2021. *Id.* ¶¶ 21–22. In March 2022, the newly installed Chief Executive Officer of "Omnicom North America," Pardo,

---

[1] At oral argument, OGI's counsel represented that Omnicom North America is a division of OMG, and Cassard's counsel did not dispute that representation. However, the Amended Complaint does not allege where "Omnicom North America" fits into the Omnicom corporate structure.

allegedly began a campaign of gender and age discrimination directed at Cassard.  *Id.* ¶ 26–27.
Pardo's actions included making offensive comments during meetings, disregarding and
demeaning Cassard's work, and excluding her from leadership meetings despite her executive
status.  *Id.* ¶¶ 28–30.

For the next three years, Pardo also diminished Cassard's role.  *Id.* ¶¶ 43–47.  For
example, in 2023, Pardo informed Cassard that she would report to Chief Activation Officer,
Megan Pagliuca ("Pagliuca").  *Id.* ¶ 43.  Cassard considered this effectively a demotion, since
Pagliuca was Cassard's peer.  *Id.* ¶¶ 43, 47.  Pagliuca's experience also related to investment and
activation, which were unrelated to Cassard's strategic and consumer-centric research functions.
*Id*. ¶ 46.  Pardo further refused to manage Cassard's team while consistently managing younger
male employees.  *Id.* ¶¶ 50–51.

On January 2, 2024, Cassard reached out to "Omnicom['s]" General Counsel Eric
Meyerowitz and later the Chief Talent Experience Officer Kate King to report the discriminatory
conduct.  *Id.* ¶¶ 62–65.[2]  Despite assurance that an investigation would be conducted, Cassard
did not receive any updates for the next 109 days.  *Id.* ¶¶ 1, 69–70.  Instead, she alleges that her
reports were "almost immediately" followed by retaliation.  *Id.* ¶¶ 61, 71.  For example, on
January 25, 2024, Cassard's role under Pagliuca was "further diminished when she was informed
that a crucial role on her team . . . would not be back filled."  *Id.* ¶ 72.  Pagliuca also informed
Cassard that she should eliminate two additional roles on Cassard's team.  *Id.* ¶ 73.  Cassard
further learned that Pagliuca was gathering negative feedback about Cassard from other
employees.  *Id.* ¶ 78.  Ultimately, Cassard's employment was terminated on May 13, 2024.  *Id.*

---

[2] At oral argument, OGI's counsel represented that Meyerowitz and King are employed by OMG.
However, the Amended Complaint does not allege the entity for which the individuals are
employed, designating Meyerowitz only as an "Omnicom" employee.  AC ¶ 62.

¶ 83.  In a brief virtual meeting, Pagliuca and an unnamed HR representative informed Cassard that Pagliuca made an "organizational decision to eliminate the need for a consumer research leader," a decision that Pardo had approved "through the proper procedures."  *Id.*

## III.    Procedural History

On or about March 10, 2025, Cassard filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") against OMG.  *Id.* ¶ 5; *see* Opp. at 4–5.  The EEOC provided Cassard with a Notice of a Right to Sue on March 10, 2025.  *Id.* ¶ 6.  Cassard then initiated this action by filing a Complaint on March 18, 2025, against OMG, OGI, OMD, and Pardo, alleging age and gender discrimination and retaliation in violation of the New York State and City Human Rights Laws, Title VII, and the ADEA.  Dkt. 1.  OGI filed a motion to dismiss the Complaint on May 27, 2025.  Dkt. 27.  Instead of responding to the motion, Cassard filed the Amended Complaint on June 9, 2025, Dkt. 31, which OMD and OMG answered on July 3, 2025.  Dkts. 36, 37.

On July 8, 2025, Pardo filed a motion to dismiss the Fifth, Sixth, and Seventh Causes of Action in the Amended Complaint, which seek relief under Title VII and the ADEA.  Dkt. 39; Dkt. 40 ("Pardo Br.").  Pardo argues that individuals are not liable for discrimination or retaliation under Title VII and the ADEA.  Pardo Br. at 1–3.  Cassard does not contest Pardo's motion, stating that "those claims were never intended to be brought against [Pardo]."  Dkt. 47.

OGI also filed a motion to dismiss the Amended Complaint in its entirety on the grounds that it does not state a cause of action against OGI.  Dkt. 41; Dkt. 43 ("OGI Br.").  The motion is fully briefed, *see* Opp.; Reply.  The Court heard oral argument on November 10, 2025.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When assessing whether a claim is plausible, the Court "assum[es] that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555. Legal conclusions, however, are not entitled to such an assumption. *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

The Court will first address OGI's motion to dismiss the Amended Complaint, or in the alternative, the federal causes of action. The Court will then briefly address Pardo's unopposed motion to dismiss the federal claims brought against him.

### I.    The Amended Complaint Fails to State a Claim against OGI

OGI first argues that the Amended Complaint should be dismissed because Cassard engages in impermissible group pleading and does not adequately plead that OGI employed Cassard. OGI Br. at 6. Alternatively, OGI seeks dismissal of the Fifth, Sixth, and Seventh federal causes of action, because Cassard did not exhaust her administrative remedies against OGI. *Id.* at 9. The Court agrees that all claims against OGI should be dismissed for failure to state a claim and therefore does not reach OGI's alternative argument regarding failure to exhaust.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The "principal function" of this rule is "to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). A complaint violates Rule 8(a)(2) when it prevents each defendant "from knowing what conduct it is alleged to have performed and, thus, against which allegations it must defend." *Plusgrade L.P. v. Endava Inc.*, No. 21-cv-1530 (MKV), 2023 WL 2402879, at *6 (S.D.N.Y. Mar. 8, 2023) (citing *Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 728 (S.D.N.Y. 2021)). Here, the Amended Complaint collectively refers to the three corporate defendants — OMG, OMD, and OGI — as "Omnicom," attributes conduct to Omnicom generally, and fails to plead the corporate entity for whom the relevant individuals were employed. *See, e.g.*, AC ¶ 20 (stating that Cassard "began working at Omnicom as the U.S. Director of Research and Analytics"); ¶ 59 (alleging that "Omnicom" diminished Cassard's role and subjected her to disparate treatment based on her age and gender); ¶ 26 (pleading that Pardo was Chief Executive Officer of "Omnicom North America"); ¶ 62 (designating Meyerowitz as "Omnicom General Counsel); ¶¶ 39, 43, 65, 79 (detailing actions of the Chief Operating Officer, Chief Activation Officer, Executive Director of Primary Research, Head of Talent, and Global Chief Talent Experience Officer without reference to whether they were acting on behalf of, or were employed by, any of the particular Defendants). In setting forth her allegations of discrimination and retaliation, Cassard does not distinguish between the three Defendants, thereby failing to adequately plead the conduct of each Defendant that purportedly creates liability under each claim.

Group pleading is not necessarily fatal to a complaint where there are sufficient allegations that the defendants acted as a single employer for purposes of the claims. *See Ward*

*v. Cohen Media Publ'ns LLC*, No. 22-cv-06431 (JLR), 2023 WL 5353342, at *8 (S.D.N.Y. Aug. 21, 2023) (finding that group pleading is not "fatal" to complaint where the defendants were "on notice of the claims and grounds for the claims, and there are sufficient allegations" of a single-employer theory of liability).  "The existence of an employer-employment relationship" is an essential element of all of Cassard's state and federal employment discrimination and retaliation claims.  *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) (alteration adopted); *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 80 (S.D.N.Y. 2020) ("An essential element of a claim under the NYSHRL or the NYCHRL is the existence of an 'employer-employee relationship.'" (quoting *Brown*, 756 F.3d at 226)); *Gilani v. Hewlett-Packard Co.*, No. 15-cv-05609 (NSR), 2018 WL 4374002, at *4 (S.D.N.Y. Sept. 12, 2018) ("Liability under either Title VII or the ADEA will only lie where there was an employer-employee relationship at the time of the alleged unlawful conduct.").  Cassard pleads that OMG was her direct employer, not OGI.  *See* AC ¶ 10 ("During Plaintiff's tenure of employment, Plaintiff and her group . . . operated under [OMG].").  But the Amended Complaint also alleges that OGI, OMG, and OMD are a "single integrated organization," and that therefore the three companies are collectively liable for their actions against her under a single-employer theory.  *Id.* ¶ 9; Opp. at 3.

A plaintiff cannot simply baldly assert that separate corporate entities constitute a single integrated organization and then refer to them collectively throughout the complaint.  To survive a motion to dismiss, the complaint must make "concrete allegations against specific entities . . . in order to create a plausible inference of an employment relationship among them." *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 422 (S.D.N.Y. 2022).  Therefore, the viability of the Amended Complaint's group pleading hinges on whether it provides sufficient facts to support a claim that the Defendants acted as a single employer of Cassard.  As outlined below, it does not.

OMG is a wholly owned subsidiary of OGI. Opp. at 3 (citing to SEC Edgar filings of which the Court may take judicial notice); Dkt. 23 (corporate disclosure statement by Defendants providing that OMG is a wholly owned subsidiary of OGI). Under a single-employer theory, a plaintiff may bring claims against her direct employer's parent company if the plaintiff "establish[es] that the defendant is part of a [single] 'integrated enterprise' with the [direct] employer." *Brown*, 756 F.3d at 226 (quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000)). At the motion to dismiss stage, "a plaintiff need not allege that the parent exercises 'total control or ultimate authority over hiring decisions,' so long as [s]he alleges that there is 'an amount of participation [by the parent] that is sufficient and necessary to the total employment process.'" *Id.* at 227 (second alteration in original) (quoting *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir. 1995)). In evaluating whether Cassard has pled that OGI and the remaining Defendants acted as a single employer, the Court must consider the so-called *Cook* factors: the "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* (quoting *Cook*, 69 F.3d at 1240); *Juhua Han v. Kuni's Corp.*, No. 19-cv-06265 (RA), 2020 WL 2614726, at *8 (S.D.N.Y. May 22, 2020) ("Courts have applied this same four-factor test to determine whether two or more entities constitute a 'single employer' under . . . the NYSHRL, and the NYCHRL.") (collecting cases).

While not necessarily dispositive, the second factor, "control of labor relations[,] is the central concern." *Brown*, 756 F.3d at 227 (citing *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)). The third and fourth factors, "common management and common ownership, are 'less important as they represent ordinary aspects of the parent-subsidiary relationship.'" *McHenry*, 510 F. Supp. 3d at 83 (quoting *Velez v. Novartis Pharm. Corp.*, 244 F.R.D. 243, 253–54 (S.D.N.Y. 2007)). Cassard must plead enough "facts supporting a reasonable inference that there

is 'an amount of participation by the parent that is sufficient and necessary to the total employment process.'" *Id.* at 81 (quoting *Brown*, 756 F.3d at 227). Conclusory assertions "about the degree of control the parent exercised over the subsidiary do not satisfy the pleading standards." *Id.* at 82.

Cassard pleads four facts in support of her claim that Defendants were a "single integrated organization." AC ¶ 9. First, Cassard pleads that, during her tenure, she and her OMG group "w[ere] regularly directed to perform work for employees of OGI, such as supplying research for an employee of OGI to use in development pitches spanning multiple entities." *Id.* ¶ 10. Second, she states that her group "was tasked with developing research and proposals for clients of other OGI entities[.]" *Id.* ¶ 11. Third, Cassard pleads that, as set out in the OMG handbook, OGI managed her employment benefits and retirement savings plan and structured and handled equity awards. *Id.* ¶ 12. Fourth, and finally, she pleads that human resources functions were "coordinated by OGI on a group level across its various entities, with shared HR policies and shared programs such as DEI," and that OMG employees were required to adhere to OGI's Code of Conduct with any violation thereof to be reported to OGI. *Id.* ¶¶ 13–14. The Amended Complaint then describes the conduct at issue here without distinguishing between any of the corporate Defendants, instead ascribing all conduct to "Omnicom" generally. *See id.* ¶¶ 20–88. Such a pleading is insufficient to create a plausible inference that OGI and OMG were a single employer.

Starting with the first factor of interrelation of operations, the Amended Complaint does not plead sufficient facts to plausibly allege that OGI and OMG were so intertwined that they constituted a single organization. Cassard alleges only that she and her group at OMG performed work for OGI, such as supplying "research for an employee of OGI to use in development pitches spanning multiple OGI entities" and "developing research and proposals for

clients of other OGI entities." *Id.* ¶¶ 10–11; *see* Opp. at 2–3. She does not, however, allege that

OGI employees directed her to perform these tasks or oversaw her daily work; nor does she

plead how much of her work was for OGI or OGI clients. *See Laurin v. Pokoik*, No. 02-cv-

01938 (LMM), 2004 WL 513999, at *5 (S.D.N.Y. Mar. 15, 2004) ("That an entity does tasks for

another does not automatically make the two part of an integrated enterprise."); *cf. Goldman v.*

*Sol Goldman Invs., LLC*, 559 F. Supp. 3d 238, 243 (S.D.N.Y. 2021) (determining that

interrelation of operations factor was met where the plaintiff alleged that the subsidiary "was

created *solely* to handle payroll functions and pay the salaries" of employees like the plaintiff).

These scant references do not establish that OGI "shared employees" or that the parent company

was "involved in [OMG's] daily decisions." *Juhua Han*, 2020 WL 2614726, at *9 (quoting

*Schade v. Coty, Inc.*, No. 00-cv-01568 (JGK), 2001 WL 709258, at *7 (S.D.N.Y. June 25,

2001)); *see id.* (holding that "[p]laintiff's conclusory allegations that the two companies have

'overlapping ownership,' 'interrelated operations,' or a shared plan of expansion . . . are

insufficient" to plead interrelation of operations because, among other things, no facts pled

supporting involvement in daily decisions; shared employees, services, records, or accounts; or

the shared maintenance of the books or filing of tax returns). Thus, the Amended Complaint

does not plausibly allege an interrelation of operations between OGI and OMG.

      Moving to the second, and most important, factor, the Amended Complaint also does not

plead sufficient facts to plausibly infer centralized control of labor relations. Cassard alleges

OGI "managed [Cassard]'s employment benefits and her retirement savings plan," that this was

"spelled out in the employee handbook for [OMG] employees," and that OGI "structured and

handled" equity awards for OMG employees. AC ¶ 12; *see* Opp. at 3. Likewise, OGI

"coordinated" HR functions, "with shared HR policies and shared programs such as DEI." AC

¶ 13. Finally, OMG's employees had to "adhere to OGI's Code of Conduct and any violations of

that Code of Conduct, as well as other types of misconduct, were reported to OGI." *Id.* ¶ 14; *see* Opp. at 3.

Shared HR policies and an organization-wide code of conduct as alleged here, without more, are insufficient to support a plausible claim of centralized control of labor relations. *See Hill v. Major League Soccer LLC*, No. 23-cv-02911 (JGK), 2024 WL 3361216, at *5 (S.D.N.Y. July 10, 2024) (citations to the parent company's diversity initiative and personnel provisions in the company constitution did not "provide a sufficient factual basis to support plaintiff's allegation that [the parent] was involved in the decision not to hire him"), *appeal dismissed sub nom. Hill v. Major League Soccer, L.L.C.*, No. 24-cv-02141, 2025 WL 450444 (2d Cir. Jan. 2, 2025); *Musiello v. CBS Corp.*, 518 F. Supp. 3d 782, 791–92 (S.D.N.Y. 2021) (determining that allegations that the parent company "'promulgated, drafted and approved' human-resources and other policies for its subsidiaries and also monitored their compliance with such policies" could not give rise to a plausible inference of centralized control of labor relations) (collecting cases); *Ennis v. TYCO Int'l Ltd.*, No. 02-cv-09070 (TPG), 2004 WL 548796, at *4 (S.D.N.Y. Mar. 18, 2004) ("The mere fact that [plaintiff] agreed to be bound by certain standards of conduct set forth by [the parent company] does not indicate that [the parent company] exercised control over or made final decisions regarding [plaintiff's] employment . . . ."). Nor does the fact that OGI managed Cassard's employment benefits, retirement plans, and equity awards give rise to a plausible inference that OGI controlled labor relations at OMG for purposes of actions taken against Cassard. *See Musiello*, 518 F. Supp. 3d at 790–91 (reasoning that "commonality of hiring, firing, discipline, pay, insurance records and supervision" did not create a reasonable inference that the parent company "had control over the hiring, discipline, or supervision"); *Ennis*, 2004 WL 548796, at *4 (determining that a parent's control of "the employee benefit plans" that plaintiff participated in "is not probative of the level of day-to-day control over

employment matters required by single employer doctrine") (collecting cases); *cf. Foster v. United Parcel Serv. of Am., Inc.*, No. 18-cv-10294 (NSR) (AEK), 2023 WL 4549316, at *7 (S.D.N.Y. July 14, 2023) (finding a plausible allegation of centralized labor relations when the plaintiff alleged that the parent "hired [the] [p]laintiff," "provided [p]laintiff with benefits, medical insurance and retirement benefits," and the parent terminated his employment (citation omitted)).

Cassard relies on *Brown v. Daikin Am. Inc.*, 756 F.3d 219 (2d Cir. 2014) in arguing that the motion to dismiss should be denied. Opp. at 3 n.3. However, the differences between *Brown* and the present case illustrate the Amended Complaint's deficiencies. In *Brown*, the plaintiff sued his former employer Daikin America, Inc. ("DAI") and its parent company Daikin Industries Ltd. ("DIL") for discharging only non-Japanese employees. *Brown*, 756 F.3d at 224. In evaluating the second factor of centralized control of labor relations, the court explained that "the central question" is "[w]hat entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Id.* at 226 (alteration in original) (quoting *Cook*, 69 F.3d at 1240). The Second Circuit concluded that the plaintiff adequately pled centralized control over labor relations because the complaint alleged "that DIL's approval was required as to all significant actions by [DAI]," "DIL immunized Japanese rotational employees [with DAI] from discharge by directing [DAI] to discharge only employees who were not Japanese," and DIL "prohibit[ed] [DAI] from reassigning or discharging Japanese rotational employees." *Id.* at 228 (internal quotation marks omitted). "Taken together, these allegations sufficiently suggest[ed] that DIL exercised centralized control over [DAI]'s decisions about which employees to terminate . . . and that DIL, . . . effectively ensured that employees of other races or national origins, like [the plaintiff], would be terminated." *Id.* The court held that "the control that [plaintiff] alleged DIL to have exercised over [DAI]'s employment actions — lying

at the core of [plaintiff]'s charges of discrimination — is adequate to sustain the action against DIL." *Id.*

Unlike the complaint in *Brown*, the Amended Complaint here does not contain sufficient factual allegations from which one could plausibly infer that OGI possessed centralized control over the employment actions "lying at the core" of Cassard's suit.  None of the areas of alleged common control over labor relations pled by Plaintiff are related to the discriminatory conduct alleged.  Cassard does not plead any details about OGI's policies or practices that dictated the actions taken against Cassard based on age, gender, or retaliation.  Even if OMG is bound by the OGI Code of Conduct, there are no facts alleged that connect this Code of Conduct to personnel decisions with respect to Cassard.  *Cf. Stoutenger v. City of Fulton*, 605 F. Supp. 3d 432, 442, 453–54 (N.D.N.Y. 2022) (finding parent company's control "over major employment decisions such as those pertaining to employee health insurance and PTO" established centralized control when part of the alleged retaliation was "tak[ing] away [the plaintiff's] $5,000 health care stipend" and "four paid personal days").

*McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51 (S.D.N.Y. 2020) reinforces the conclusion that the allegations here do not support a reasonable inference of centralized control over labor relations.  *McHenry* involved a sexual harassment and retaliation suit brought by the plaintiff against multiple defendants, including her employer Fox News, LLC, and its parent company, Fox Corp.  510 F. Supp. 3d at 59–60.  In support of a single-employer theory, the plaintiff pled that Fox Corp. made hiring and firing decisions, and controlled "the discipline, pay, insurance, records, and supervision of Fox News."  *Id.* at 82 (citation omitted).  The plaintiff further alleged that Fox Corp. and its executives hired and controlled the employment of Fox News employees.  *Id.*  The court found these conclusions insufficient to plausibly plead centralized control of labor relations because they were "devoid of any factual detail relating to

13

the details or process of these hires." *Id.*  The district court concluded that without these specific

factual allegations the complaint's claims were predicated only on the normal corporate

relationship between a parent company and subsidiary. *Id.*  ("[T]he fact that Fox Corp. is the

parent of Fox News does not itself evidence control of labor relations, for treating that fact as

dispositive would vitiate the purpose of the single-employer inquiry.").  The court also noted that

the complaint's one concrete fact supporting centralized control — that Fox Corp. and Fox News

shared an HR official — was insufficient because even though the plaintiff met with the HR

official and provided copies of documents, the complaint did not allege that the HR official

investigated the complaint or personally terminated the plaintiff.  *Id.* at 82–83.

As in *McHenry*, the Amended Complaint's allegations do not identify processes through

which OGI exercises labor relations control over OMG.  The Amended Complaint makes general

allegations that OGI controls employee benefits and coordinates HR policies.  But, as the court

reasoned in *McHenry*, these conclusory assertions lack sufficient "factual detail" and do not

constitute a degree of control beyond that of a normal parent-subsidiary corporate structure.  *Id.*

at 82.  In addition, Cassard does not allege that OGI and OMG shared the same HR department

or HR professionals, only that the companies shared some HR policies.  Finally, even though the

Amended Complaint alleges that Cassard complained to "Omnicom" General Counsel Eric

Meyerowitz and the Global Chief Talent Experience Officer Kate King, AC ¶¶ 62, 65, Cassard

does not plead that Meyerowitz or King were OGI representatives, that they investigated her

complaints, or that they were involved, if at all, with any alleged discrimination or retaliation

against Cassard.  *See McHenry*, 510 F. Supp. 3d at 82–83 (determining that similar allegations of

conduct by a shared HR official were insufficient to infer the parent company's involvement in

the "operations contemplated by the single-employer test"); *cf. St. Jean v. Orient-Express Hotels

Inc.*, 963 F. Supp. 2d 301, 309–10 (S.D.N.Y. 2013) (finding centralized control of labor relations

14

in part where the complaint alleged that a controlling company's HR director investigated the plaintiff's complaint, interviewed the plaintiff, and personally fired the plaintiff). Thus, the Amended Complaint fails to sufficiently allege centralized control over labor relations.

Although the Amended Complaint's lack of sufficient facts supporting centralized control of labor relations creates an almost insurmountable barrier for Cassard to overcome, the Amended Complaint further does not allege facts supporting common management. Cassard does not even address this factor in her opposition brief, mentioning only that satisfaction of all four factors is not necessary. *See* Opp. at 3, 3 n.3.

The only factor that Cassard plausibly pleads is common ownership, *see* Dkt. 23, but "[t]his factor alone does not support a finding of centralized control," *Fenner v. News Corp.*, No. 09-cv-09832 (LGS), 2013 WL 6244156, at *12 (S.D.N.Y. Dec. 2, 2013); *Juhua Han*, 2020 WL 2614726, at *12 ("[T]he existence of a parent-subsidiary relationship is insufficient on its own to support a finding that the two entities are a single or joint employer for purposes of Title VII." (quoting *Brathwaite v. Sec. Indus. Automation Corp.*, No. 06-cv-0300 (ERK) (JMA), 2006 WL 8439237, at *4 (E.D.N.Y. Dec. 1, 2006))).

The additional cases that Cassard cites in opposition to the motion to dismiss are unpersuasive and distinguishable. First, Cassard relies on *Christiansen v. Omnicom Grp., Inc.*, 167 F. Supp. 3d 598 (S.D.N.Y. 2016), where the court found that the complaint adequately pled a single-employer theory with respect to OGI and a subsidiary. Opp. at 4. However, *Christiansen* concerned a different subsidiary of OGI, DDB Worldwide Communications Group ("DBB"), and the *Christiansen* plaintiff alleged that OGI "exercise[d] extensive control over DBB's operations and personnel decisions" and "controlled [his] health, retirement and other benefits," which were part of the alleged discriminatory conduct. *Christiansen*, 167 F. Supp. 3d at 609 (second alteration in original) (internal quotation marks and citation omitted); *see also id.*

15

at 606 ("[Plaintiff] alleges two acts of employment-related misconduct . . . [that he] received a promotion . . . but did not receive a corresponding salary increase until a one year later" and that "[d]efendants offered [him] a three-month severance package in exchange for [his] resignation."). Additionally, in *Christiansen*, one of the individual defendant wrongdoers was employed by both DBB and OGI. *See* Complaint ¶ 14, *Christiansen*, 167 F. Supp. 3d 598 (No. 15-cv-03440), ECF No. 4. Not only the does the Amended Complaint here lack any allegations of "extensive control" over OMG operations and personnel decisions, but there are no allegations that OGI or an OGI employee was involved in the discriminatory or retaliatory conduct alleged.

*Santorio v. Care.com, Inc.*, No. 24-cv-00359 (AMN) (ML), 2025 WL 894989 (N.D.N.Y. Mar. 24, 2025), cited by Cassard, is also distinguishable. In *Santorio*, the *pro se* plaintiff, afforded special solicitude given his uncounseled status, pled several more facts in support of a single-employer theory than Cassard, including that the parent company treated the subsidiary's revenue as part of its own in public financial statements; the subsidiary's CEO was considered part of the parent's leadership team; the parent company "issued [the] [p]laintiff's stock, managed his retirement benefits, provided [his] healthcare plan"; and the relevant parent company executives were deeply involved in key employment matters, such as hiring and firing, and were the "final decision maker[s]" in the plaintiff's interview process. 2025 WL 894989, at *5. The Amended Complaint does not contain the breadth of allegations in support of single-employer treatment as pled in *Santorio* and, importantly, does not allege that OGI played a significant role in OMG personnel decisions, including with respect to Cassard.

Based on the analysis above, the Amended Complaint fails to allege facts that would support a plausible claim that OGI acted as a single employer with the remaining Defendants under the *Cook* factors. Cassard has thus failed to plead that OGI was her employer, a necessary element for all of her employment claims. Accordingly, OGI's motion to dismiss for failure to

state a claim is granted.  Given this, the Court need not reach OGI's alternative argument to dismiss the federal claims for failure to exhaust administrative remedies.

Finally, Cassard's claims against OGI will be dismissed with prejudice because Cassard has already amended her complaint in response to OGI's similar earlier motion to dismiss the claims for the same reasons: impermissible group pleading, and failing to allege "any factual allegations to support that OGI, OMG or OMD are intertwined in general such that OGI may be held liable for the acts or omissions of OMG, OMD or [Pardo], let alone . . . how such organizational interconnectedness applies to Plaintiff."  Dkt. 29 at 3–4.  Notwithstanding being notified of the specific deficiencies in her pleading, Cassard continued to engage in impermissible group pleading and failed to adequately plead facts that support a plausible claim that OGI was her employer.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505–06 (2d Cir. 2014) (affirming a district court's dismissal of an amended complaint with prejudice because the plaintiff already amended complaint in response to motion to dismiss).  Although Cassard's counsel briefly requested leave to amend at oral argument if the Amended Complaint were found to be deficient, counsel did not suggest any facts that Cassard would plead to cure the deficiencies and, indeed, many of the facts that were discussed during oral argument such as Pardo, Meyerowitz, and King's employment with OMG, rather than with OGI, would support a finding of futility.  *See supra* at nn.1, 2; *TechnoMarine*, 758 F.3d at 505 ("A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint."); *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022) (denying of leave to amend is proper "where the request gives no clue as to how the complaint's defects would be cured" (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015))).

## II.    The Court grants Pardo's Motion to Dismiss Fifth, Sixth, and Seventh Causes of Action

As for Pardo's motion to dismiss, the Court agrees with Pardo that the federal claims against him should be dismissed because Title VII and the ADEA do not impose liability on individuals.  *See Sassaman v. Gamache*, 566 F.3d 307, 315 (2d Cir. 2009) (affirming the district court's "dismissal of the complaint with respect to [the individual defendant] because 'individuals are not subject to liability under Title VII'" (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004))); *Williams v. N.Y.C. Dep't of Educ.*, No. 17-cv-01996 (AJN), 2018 WL 4735713, at *4 (S.D.N.Y. Sept. 29, 2018) ("Courts in this circuit have therefore consistently found that the ADEA, like Title VII, does not impose liability on individuals." (quoting *Wang v. Palmisano*, 51 F. Supp. 3d 521, 537 (S.D.N.Y. 2014))) (collecting cases). Cassard does not oppose Pardo's motion to dismiss these federal claims.  Dkt. 47.  Therefore, the Court will dismiss the Fifth, Sixth, and Seventh Causes of Action against Pardo.

## CONCLUSION

For the foregoing reasons, the Court GRANTS OGI's motion to dismiss the Amended Complaint with prejudice.  The Court further GRANTS Pardo's motion to dismiss the Fifth, Sixth, and Seventh Causes of Action against him with prejudice.  The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 39 and 41, and to terminate OGI as a Defendant in this case.

Dated:  November 19, 2025
      New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge